IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JASON W. REED,

      Petitioner,

v.                           Case No. 4:19cv436-WS/MAF

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

                              /

## REPORT AND RECOMMENDATION

On September 6, 2019, Petitioner Jason W. Reed, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He subsequently filed an amended § 2254 petition. ECF No. 7. On May 22, 2020, Respondent filed an answer, ECF No. 17, with exhibits, ECF No. 18. Petitioner filed a reply on September 29, 2020. ECF No. 26.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the

pleadings and attachments before the Court show Petitioner is not entitled

to federal habeas relief, and the amended § 2254 petition should be denied.

## Background and Procedural History

On July 2, 2012, Petitioner Jason Reed entered nolo contendere pleas

in two Walton County Circuit Court cases. Ex. B4 at 2 (transcript of plea

hearing).[1]   Specifically, in case number 11-494CF, he pled to two counts:

(1) sexual battery on a physically helpless victim twelve years of age or older,

a first degree felony, in violation of section 794.011(4)(a), Florida Statutes;

and (2) burglary of a structure with an assault or battery, a life felony, in

violation of sections 810.02(1)(b) and (2)(a), Florida Statutes.   Ex. B4 at 2;

*see* Ex. B1 at 266.   In case number 11-506CF, he pled to two counts:   (1)

sexual battery on a victim twelve years of age or older with coercion by

threat, a first degree felony, in violation of section 794.011(4)(b), Florida

Statutes; and (2) burglary of a dwelling with an assault or battery, a life

felony, in violation of section 810.02(1)(b) and (2)(a), Florida Statutes.   Ex.

B4 at 2; *see* Ex. B1 at 266.   The court found the pleas freely and voluntarily

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits, ECF No. 18, submitted with Respondent's answer, ECF No. 17.

entered and, on July 3, 2012, pursuant to the plea agreement, sentenced Reed to twenty-five (25) years in prison on each count, to run concurrent, with credit for time served, and designated Reed a sexual offender.   Ex. B4 at 6-8.   Reed did not file a direct appeal.

On May 22, 2013, Reed filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850. Ex. B3 at 1372-84 (exclusive of attachments).   By order on August 19, 2013, the state post-conviction trial court struck the motion, finding Reed's claims appeared facially insufficient, and granted Reed sixty (60) days to file an amended motion.   Ex. B1 at 296-301.   On October 9, 2013, Reed filed an amended Rule 3.850 motion.   Ex. B3 at 1416-49 (exclusive of attachments). By order on April 9, 2014, the state court struck the amended motion, explaining Reed's claims were not clear, and granted him sixty (60) days to file a second amended motion.   Ex. B1 at 336-40.

On May 29, 2014, Reed filed a second amended Rule 3.850 motion. Ex. B3 at 1549-83 (exclusive of attachments).   By order on February 20, 2015, the state post-conviction trial court directed the State to file a response. Ex. B1 at 419-21.   On September 9, 2015, the State filed its response.   *Id.*

at 428-33.   Reed filed a reply on June 18, 2015.   *Id.* at 450-61.   The State filed a corrected amended response on August 4, 2015.   *Id.* at 487-89. Reed filed a reply thereto on August 25, 2015.   *Id.* at 493-99.   On October 20, 2015, counsel filed a Notice of Appearance for Reed in the pending Rule 3.850 proceeding.   *Id.* at 503-04.

On January 26, 2016, the state court ordered a limited evidentiary hearing on the second amended Rule 3.850 motion.   *Id.* at 505-09.   The evidentiary hearing occurred on August 23, 2016, during which Reed was represented by counsel.   Thereafter, both sides filed written closing arguments.   Ex. B1 at 549-55 (State), 716-36 (Reed).   In an order rendered June 27, 2017, the state court denied post-conviction relief.   *Id.* at 737-53.

Through counsel, Reed appealed the denial of post-conviction relief to the First District Court of Appeal (First DCA) and filed an initial brief, assigned case number 1D17-2790.   Ex. B5.   The State filed an Answer Brief.   Ex. B6.   Reed filed a reply brief.   Ex. B7.   The First DCA affirmed the case without a written opinion on May 21, 2019.   Ex. B8; Reed v. State, 278 So. 3d 583 (Fla. 1st DCA 2019) (table).   Reed filed a motion for rehearing and motion for written opinion, Ex. B9, which the First DCA denied by order on

June 18, 2019, Ex. B10.   The mandate issued July 9, 2019.   Ex. B11.

As indicated above, Reed filed a § 2254 petition in this Court on September 6, 2019.   ECF No. 1.   He subsequently filed an amended § 2254 petition.   ECF No. 7.   In his amended petition, he raises four grounds, all alleging ineffective assistance of counsel (IAC):

> (1)   **IAC – Supervision and "Sexual Offender" Designation**: "Defense counsel rendered ineffective assistance of counsel by affirmatively misadvising Petitioner Reed that his sentence would not subject him to post-prison supervision and defense counsel rendered ineffective assistance of counsel by affirmatively misadvising Petitioner Reed that he would be deemed a 'sexual offender' – not a 'sexual predator.'"   *Id*. at 11-18.

> (2)   **IAC – Williams Rule Evidence**:   "Defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner regarding the <u>Williams</u> rule."   *Id*. at 19-25.

> (3)   **IAC – Consent Defense**:   "Defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner Reed that he had a valid consent defense to the charges involving alleged victim K.W."   *Id*. at 25-29.

> (4)   **IAC – Misidentification Defense**:   "Defense counsel rendered ineffective assistance of counsel by failing to properly advise Petitioner Reed that he had a valid misidentification defense to the charges involving alleged victim D.B."   *Id*. at 29-33.

On May 22, 2020, Respondent filed an answer, ECF No. 17, with exhibits, ECF No. 18.   Petitioner filed a reply on September 29, 2020.   ECF No. 26.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.   Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).   This Court's

review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

The <u>Strickland</u> test applies to IAC claims arising out of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann</u>.'" *Id.* at 56-57 (quoting <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973)). That a plea is one of nolo contendere, as here, rather than guilty, does not warrant a different analysis for purposes of federal habeas corpus. *See* <u>North Carolina v.</u>

<u>Alford</u>, 400 U.S. 25, 35-37 (1970); *see also* <u>Florida v. Royer</u>, 460 U.S. 491, 495 n. 5 (1983) (explaining that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty").

### <u>Ground 1</u>:   IAC – Post-Prison Supervision and "Sexual Offender"/"Sexual Predator" Designation

In his first ground, Petitioner Reed asserts that defense counsel provided ineffective assistance "by affirmatively misadvising Petitioner Reed [(a)] that his sentence would not subject him to post-prison supervision and . . . [(b)] that he would be deemed a 'sexual offender' – not a 'sexual predator.'"   *Id.* at 11-18.   Reed raised these claims in state court as grounds four and five of his second amended Rule 3.850 motion.   Ex. B3 at 1568-73.   The state post-conviction court denied the claims, making findings in its written order.

### Findings of State Post-Conviction Court

The state post-conviction court summarized the procedural history of the case, explaining Reed had entered nolo contendere pleas in two cases and he "was sentenced to twenty-five years of incarceration in the Florida Department of Corrections and was designated a sexual offender."   Ex. B1 at 738.   As to the claim of affirmative misadvice regarding post-prison supervision, the state post-conviction court explained its decision:

## IV)   Ineffective assistance of counsel allegedly for misadvising the defendant regarding "post-prison supervision"

In his fourth claim, the defendant alleges that his counsel was ineffective for misadvising him regarding Florida's conditional release program.   In particular, the defendant alleges his counsel was aware the defendant requested and believed his plea agreement did not require any post-prison supervision.   The defendant alleges his counsel informed him the instant plea agreement satisfied the defendant's request. However, the defendant alleges such information constitutes misadvice because he is eligible for conditional release supervision upon his release from incarceration.   The defendant also alleges "misadvice" occurred because of "counsel's withholding of these pertinent facts."

At the evidentiary hearing, the defendant and Mr. Leonard Platteborze testified.   The defendant testified his counsel advised him he "would only have to serve eighty-five percent" of his sentence.   The defendant also testified he "did not want to take a plea that would subject [him] to probation or any kind of supervision when [he] got out of prison."   Additionally, the defendant testified he "was presented with a twenty-five year plea with no probation [and] was under the assumption that meant there would not be any kind of supervision after prison." The defendant testified his counsel did not discuss Florida's conditional release program.

Mr. Leonard Platteborze testified he "vaguely" remembered representing the defendant.   Mr. Leonard Platteborze testified he did not discuss Florida's conditional release program with the defendant.   Mr. Leonard Platteborze also testified he did not discuss the defendant's eligibility for such program with the defendant.

After considering the testimony presented at the evidentiary hearing, the court concludes the defendant has failed

to demonstrate an entitlement to relief.   The court finds the defendant's testimony to be credible.   The defendant does not establish either prong of <u>Strickland</u>.   The testimony at the evidentiary hearing reflects the defendant desired a plea offer that did not require any post-prison supervision.   The testimony is also clear the defendant obtained a plea offer that satisfied such requirement because the offer did not require any probation.   Although the defendant may believe otherwise, his eligibility for the conditional release program is not a requirement of his plea offer and sentence.   Additionally, the testimony is clear misadvice did not occur as the defendant acknowledges counsel did not discuss Florida's conditional release program. Furthermore, counsel is not required to inform the defendant of his eligibility for conditional release because he entered a negotiated plea.   Therefore, the instant claim is denied.

Ex. B1 at 747-49 (footnotes omitted).

As to the claim of affirmative misadvice regarding sexual predator

designation, the state post-conviction court made the following findings:

### V)   Ineffective assistance of counsel allegedly for "affirmative misadvice regarding Sexual Predator Designation, Jimmy Ryce Act, and Involuntary Civil Commitment"

In his fifth claim, the defendant alleges his counsel was ineffective for affirmatively misadvising the defendant regarding his eligibility to be classified as a sexual predator and subject to the Jimmy Ryce Act and involuntary civil commitment following his release from incarceration.   In particular, the defendant alleges his counsel advised the "Defendant was only being required to register as a sex offender."

At the evidentiary hearing, the defendant and Mr. Leonard Platteborze testified.   The defendant testified his counsel "only discussed the sexual offender" requirements.   The defendant

also testified his counsel told him the sexual predator sections on his written plea form "did not apply" and "did not go over it with me." The defendant testified he would not have accepted the plea if he had been advised of the sexual predator designation. The defendant also acknowledged the court initially informed the defendant he was eligible for sexual predator designation at sentencing. Additionally, the defendant testified his counsel did not discuss the Jimmy Ryce Act, including whether such act applied to him. The defendant also testified he learned of the Jimmy Ryce Act after he was incarcerated in the Florida Department of Corrections.

Mr. Leonard Platteborze testified he "vaguely" remembered representing the defendant. Mr. Leonard Platteborze testified he discussed sexual offender and sexual predator designations with the defendant. Mr. Leonard Platteborze also testified he believed the defendant would be designated a sexual offender and the state confirmed such belief before he drafted the original offer of plea.

After considering the testimony presented at the evidentiary hearing, the court concludes the defendant has failed to demonstrate an entitlement to relief. The court finds the defendant's testimony to be credible. The defendant does not establish prejudice. The testimony reflects the defendant was aware that he may be designated a sexual predator because the court raised such issue at the defendant's plea and sentencing hearing. Considering such information, the defendant does not show a reasonable probability that undermines confidence in the outcome. Furthermore, the defendant's testimony refutes his claim that he was misadvised regarding application of the Jimmy Ryce Act. Indeed, the defendant testified that his counsel did not discuss the Jimmy Ryce Act. Counsel could not have "affirmatively misadvised" the defendant regarding involuntary civil commitment under the Jimmy Ryce Act because such Act was not discussed. In any event, counsel is not required to advise the defendant regarding a collateral consequence of his plea, which includes the application of the Jimmy Ryce Act. As

a result, counsel could not be ineffective for failing to advise the defendant of a collateral consequence of his plea. Therefore, the instant claim is denied.

Ex. B1 at 749-51 (footnotes omitted).

Reed appealed the denial of these claims to the First DCA. Ex. B5 at 13-14. The First DCA affirmed the case without a written opinion. Reed v. State, 278 So. 3d 583 (Fla. 1st DCA 2019) (table). The First DCA's summary affirmance is also an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). A review of the record supports the state courts' determination. *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). In particular, the transcript of the evidentiary hearing supports the state post-conviction court's findings regarding the testimony of Reed and his trial counsel, Leonard Platteborze.

### (a) Post-Prison Supervision

As to the claim concerning post-prison supervision, Reed testified:

Q.   Now, did Mr. Platteborze discuss with you prior to you entering a plea any issues concerning Florida's conditional release program?

A.   No.   Only that I would – on the 25 year sentence I would only have to serve 85 percent.

Ex. B4 8/23/16 at 22.   Reed testified this was problematic because he "did

not want to take a plea that would subject [him] to probation or any kind of

supervision when [he] got out of prison" because of his "age, lack of money,

lack of places to live and concern with if there was any kind of a violation with

maybe a violation of not being able to pay . . . fines and restitution, then [he]

would have to go back to prison and potentially go back to prison for life."

*Id.* at 22-23.   Reed testified that when he "was presented with a 25 year plea

with no probation," he "was under the assumption that meant there would

not be any kind of supervision after prison."   *Id.* at 23.   He testified:

Q.   . . . Mr. Reed, did Mr. Platteborze, your attorney, ever explain to you or tell you that with gain time you would serve 85 percent of the 25 years and that there would be no subsequent supervision?

A.   That was the impression that I got from him introducing the 25 years because he knew that I didn't want any supervision, so he brought the 25 years to me and said this plea meets your requirements of no supervision.   Then he said – now because I

> brought up an issue of parole not knowing that it had actually
> been – I knew it had been taken away.   I didn't know if it would
> ever come back.   He said he wasn't sure whether parole would
> ever come back, but you'll only have to serve 85 percent of this
> 25 years.

*Id.* at 31-32.   Reed testified that, after he got to prison, he "started hearing other inmates talking about conditional release and they explained to [him] that the other 15 that you did not have to serve while in prison, you would have to serve actually on supervision" and he thought "that can't be because certainly my attorney would have told me especially since I took five extra years in prison" to avoid being on supervision.   *Id.* at 23; *see id.* at 38.

Platteborze testified that he "vaguely" recalled representing Reed.   *Id.* at 46.   Platteborze testified he never discussed Florida's conditional release program with Reed or Reed's eligibility for such a program.   *Id.* at 47, 51.

"[C]onditional release is not a form of sentence, and it is not imposed by a court."   Mayes v. Moore, 827 So. 2d 967, 971 (Fla. 2002). "'Conditional release' is a post-prison program under which a defendant who meets the specified statutory criteria may be released from prison prior to the expiration of his or her imposed sentence based on earned gain time, but he or she remains under the supervision of the Department of Corrections for a period equal to the amount of the gain time earned while incarcerated."

<u>Chandler v. State</u>, 1 So. 3d 284, 286 n.1 (Fla. 2d DCA 2009); *see* § 947.1405(2), Fla. Stat. (2011). "Although the statute may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into postrelease supervision, neither gain time nor conditional release is a true part of a criminal sentence." <u>Mayes</u>, 827 So. 2d at 971. "Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission." *Id.* Thus, "[b]ecause conditional release does not impose an enhanced criminal penalty or sentence, no actual notice of an offender's eligibility for this [conditional release] program is required" when negotiating a plea. *Id.* Further, because "no actual notice is required, counsel cannot be ineffective and a defendant's plea cannot be involuntary based solely on a lack of notice" of eligibility for conditional release. <u>Chandler</u>, 1 So. 3d at 288 (finding claim of affirmative misadvice of counsel facially sufficient, reversing summary denial of Rule 3.850 motion, and remanding for evidentiary hearing where "Chandler alleged in his motion that his trial counsel 'advised defendant that he would do 85% of his sentence and 'that's it'" and he "alleged that the trial court advised him that 'once he is done with

his time, he is done with his time'").

As the post-conviction court found, Reed wanted a plea offer that did not require him to serve any post-prison supervision.   The record reflects that the plea offer Reed accepted met this requirement.   *See* Ex. B1 at 245-51.   According to Reed, defense counsel advised him that he would serve 85 percent of his sentence, and according to both Reed and Platteborze, Platteborze never discussed the conditional release program with Reed. Rather, Reed testified he "was under the assumption" his 25-year plea deal would not involve any post-prison supervision and "[t]hat was the impression [he] got from [Platteborze] introducing the 25 years because [Platteborze] knew that [he] didn't want any supervision."   Ex. B4 8/23/16 at 23, 31-32 The written plea contains a certification by Reed that his "attorney, the Court and the prosecutor have not made any promises nor [has he] relied on any representation as to actual time [he] would serve."   Ex. B1 at 246.   The written plea also contains an acknowledgment, signed by Reed, that he has "read and understand[s] the contents of this document, and if represented by an attorney, [he has] discussed with [his] attorney all of the ramifications or consequences of entering a plea of guilty or nolo contendere to these charges" and he was "satisfied with the attorney's advice and services."   *Id.*

at 250.

Therefore, the state post-conviction court did not unreasonably determine, after the evidentiary hearing, that Reed obtained a plea offer that did not require any post-prison supervision, Reed's eligibility for the conditional release program was not a requirement of his plea offer and sentence, misadvice did not occur as Reed himself indicated defense counsel did not discuss the conditional release program, and defense counsel was not required to inform Reed of his eligibility for such program in the context of the negotiated plea.    Thus, the state court did not unreasonably conclude that Reed had not shown deficient performance or prejudice under Strickland.

### (b) "Sexual Offender"/"Sexual Predator" Designation

As to the claim concerning sexual predator designation, Reed testified he and Platteborze "only discussed the sexual offender" requirements "because that was part of my plea agreement."    *Id*. at 23.   Reed testified:

> Once on July 2nd when I was reviewing the plea agreement and I noticed that sexual predator was in bold or highlighted on the actual plea agreement, I asked Platteborze why sexual predator was highlighted and he was standing next to me and he pointed down to section 415 and 416 saying those do not apply to you. You are only going to be subjected to sexual offender designation and then he motioned his hand down to section 417.

*Id.* at 23-24.   Reed explained this was on the third page of the plea agreement and, after Platteborze said he was going to be designated as a sexual offender, Reed "scanned down to sexual offender, a portion of it, and realized that it was bolded and so [Reed] assumed [Platteborze] was correct."   *Id.* at 25.   Reed testified Platteborze did not explain anything else about this.   *Id.* at 26.   Reed testified that if he had been advised that he would be designated a sexual predator, not a sexual offender, he would not have taken a plea because he "did not want the more onerous designation of sexual predator."   *Id.*   He further testified that Platteborze did not discuss the Jimmy Ryce Act and whether it applied to him.   *Id.*   He explained that, during a mental evaluation, he found out about "the Jimmy Ryce and the sexual predator and involuntary civil commitment," and the evaluator told him that his charges "are a designation for sexual predator and prior to getting out of prison [he] will be evaluated for involuntary civil commitment."   *Id.* Reed testified this was the first he had heard of this and he "was pretty disturbed about it," and he "went back to the dorm and drug out [his] plea agreement and found this actual information on the plea agreement."   *Id.* at 27.   Reed testified he would not have entered the plea if he had known this information.   *Id.*

On cross, Reed agreed that it was everyone's intent at the plea hearing that he be classified as a sexual offender, not a sexual predator; in fact, the prosecutor and Platteborze had corrected the judge when the judge "tried to properly designate [him] as a sexual predator."   *Id.* at 38-39.   Reed further agreed that the plea form lists the names of the charges but not the statute numbers.   *Id.* at 39.

Platteborze testified he explained to Reed "sexual predator" versus "sexual offender," and it was his understanding that Reed would be designated a sexual offender.   *Id.* at 51.   Platteborze testified he had spoken to the prosecutor before Reed entered the plea, and the prosecutor had confirmed that.   *Id.*; *see id.* at 56.

<u>"Sexual Offender" Designation</u>

As indicated above, in the order denying post-conviction relief, the state court recounted that Reed "was designated a sexual offender."   Ex. B1 at 738.   This is consistent with the record, as explained below. Significantly, although not addressed by either side, nothing in the record specifically indicates that Reed's designation is that of a "sexual predator." In discussing this ground, neither side provides record support for such designation.   *See* ECF No. 7 at 3-18; ECF No. 17 at 3-4, 19-28; ECF No. 26

at 1-4.

The record includes the transcript of the plea hearing, during which the following transpired:

> THE COURT:   Mr. Reed, your attorney, Mr. Platteborze, has handed me an offer of plea stating you wish to plea no contest in 11-495 (sic) to one count of sexual battery with a victim physically helpless, a first-degree felony; count two, burglary of a dwelling with assault or battery, a life felony.   And in case number 11-506, one count of sexual battery with threat of force likely to cause serious injury, a first-degree felony; and in count two, burglary of a dwelling with assault or battery, a life felony.   Are those what you wish to plea to?
>
> THE DEFENDANT:   They are.
>
> THE COURT:   Excuse me?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:   Did you read and sign this offer of plea?
>
> THE DEFENDANT:   I did.
>
> THE COURT:   Did you understand it?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   If you had any questions, were they explained to you by your attorney?
>
> THE DEFENDANT:   Yes.
>
> . . . .
>
> THE COURT:   And you understand you're entering a plea to a

25-year Department of Corrections sentence?   That's a mandatory minimum sentence?

MS. MASON [prosecutor]:   No, sir.

THE COURT:   It's not a minimum – mandatory minimum.   But that will be followed by lifetime monitoring?

MR. PLATTEBORZE:   No, sir.

THE COURT:   It's not?

MS. MASON:   No, sir.

THE COURT:   All right.   And – And so he – will it be followed by a period of probation?

MS. MASON:   There's no probation.

THE COURT:   All right.   And – And this plea agreement has been discussed with the victims and they're in agreement with this?

MS. MASON:   Yes, sir.

THE COURT:   He understands he will be designated as a sexual predator?

MR. PLATTEBORZE:   Offender.

MS. MASON:   Offender.

THE COURT:   Mr. Reed, do you understand the meaning of being designated a sexual offender?

THE DEFENDANT:   I do.

THE COURT:   And you understand and your attorney has told

you all of the registration requirements and all the conditions set forth concerning reporting your residency when you're released from the Department of Corrections?   You understand that?

THE DEFENDANT:  I do.

THE COURT:  You don't have any questions concerning that designation?

THE DEFENDANT:   No.

Ex. B4 07/03/12 at 2-5.   In addition, the written plea offer, signed by Reed,

indicates Reed is "to be designated Sexual Offender," Ex. B1 at 245, and the

written judgment and sentence likewise provides that he "meets the criteria

for a sexual offender," *id*. at 269.   The State's written closing argument filed

after the Rule 3.850 evidentiary hearing provides, as to this claim:

> The Defendant claims that he was advised by a mental health advisor in DOC that his charge met the criteria for qualification as a Sexual predator which requires that he be evaluated under the Jimmy Ryce Act, and possibly involuntarily committed.
>
> While the Defendant's charge could qualify him for designation as a sexual predator, the Defendant lacks the prior criminal history for such designation.   Defendant's prior record has no qualifying felony offenses and, while the Defendant was convicted of two separate acts of sexual battery, these convictions came on the same date.   Under Florida Statute 775.21(4)(b), "[i]n order to be counted as a prior felony for purposes of this subsection, the felony must have resulted in a conviction sentenced separately . . . prior to the current offense and sentenced or adjudicated separately from any other felony conviction that is to be counted as a prior felony regardless of the date of the prior offense."   Id. at 775.21(4)(b).

> Although these offenses occurred on separate dates, they were sentenced & the convictions entered on the same day; therefore, this Defendant does not qualify as a Sexual Predator.   It is clear from the record that it was the intention of all parties that the Defendant be sentenced as a sexual offender and not a sexual predator.   Further, the Court made no written findings that the Defendant was a Sexual Predator; therefore the Defendant should be classified as a sexual offender.

Ex. B1 at 553-54.   A search on the Florida Department of Law Enforcement's Sexual Offender Predator Systems "Sexual Offenders and Predators" webpage confirms that Reed's "designation" is "sexual offender." *See* https://offender.fdle.state.fl.us/offender/sops/offenderSearch.

<u>Sexual Predator</u>

In the amended § 2254 habeas petition, counsel for Reed explains that the two sexual battery counts to which Reed entered his plea constitute first degree felonies and both were violations of section 794.011(4), Florida Statutes.   ECF No. 7 at 12; *see* Ex. B1 at 266 (Judgment).   Thus, he argues that pursuant to the plain language of section 775.21, Florida Statutes, Reed is a sexual predator.

Section 775.21, Florida Statutes, is the Florida Sexual Predators Act. § 775.21, Fla. Stat. (2011).   The Act provides, in pertinent part:

(4) SEXUAL PREDATOR CRITERIA. –

(a)  For a current offense committed on or after October 1, 1993, ***upon conviction***, an offender shall be designated as a "sexual predator" under subsection (5), and subject to registration under subsection (6) and community and public notification under subsection (7) if:

   1.  The felony is:

      a.  A capital, life, or ***first-degree felony violation***, or any attempt thereof, of . . . ***s. 794.011***, . . . or a violation of a similar law of another jurisdiction; ***or***

      b.  Any felony violation, or any attempt thereof, of . . . s. 794.011, excluding s. 794.011(10); . . . or a violation of a similar law of another jurisdiction, and the offender has been previously convicted of or found to have committed, or has pled nolo contendere or guilty to, regardless of adjudication, any violation of . . . s. 794.011, excluding s. 794.011(10); . . . or a violation of a similar law of another jurisdiction; . . . .

   2.  The offender has not received a pardon for any felony or similar law of another jurisdiction that is necessary for the operation of this paragraph; and

   3.  A conviction of a felony or similar law of another jurisdiction necessary to the operation of this paragraph has not been set aside in any postconviction proceeding.

(b)  In order to be counted as a prior felony for purposes of this subsection, the felony must have resulted in a conviction sentenced separately . . . .

(c) If an offender has been registered as a sexual predator by the Department of Corrections, the department, or any other law enforcement agency and if:

   1. The court did not, for whatever reason, make a written finding

at the time of sentencing that the offender was a sexual predator; or

2. The offender was administratively registered as a sexual predator because the Department of Corrections, the department, or any other law enforcement agency obtained information that indicated that the offender met the criteria for designation as a sexual predator based on a violation of a similar law in another jurisdiction,

The department shall remove that offender from the department's list of sexual predators and, for an offender described under subparagraph 1., shall notify the state attorney who prosecuted the offense that met the criteria for administrative designation as a sexual predator, and, for an offender described under this paragraph, shall notify the state attorney of the county where the offender establishes or maintains a permanent, temporary, or transient residence.  The state attorney shall bring the matter to the court's attention in order to establish that the offender meets the criteria for designation as a sexual predator.  If the court makes a written finding that the offender is a sexual predator, the offender must be designated as a sexual predator, must register or be registered with the department as provided in subsection (6), and is subject to the community and public notification as provided in subsection (7).  If the court does not make a written finding that the offender is a sexual predator, the offender may not be designated as a sexual predator with respect to that offense and is not required to register or be registered as a sexual predator with the department.

(d)  An offender who has been determined to be a sexually violent predator . . . .

(5) SEXUAL PREDATOR DESIGNATION.— An offender is designated as a sexual predator as follows:

(a)1.   An offender who meets the sexual predator criteria described

in paragraph (4)(d) is a sexual predator . . .;

2. ***An offender who meets the sexual predator criteria described in paragraph (4)(a) who is before the court for sentencing for a current offense committed on or after October 1, 1993, is a sexual predator, and the sentencing court must make a written finding at the time of sentencing that the offender is a sexual predator, and the clerk of the court shall transmit a copy of the order containing the written finding to the department within 48 hours after the entry of the order***; or

3. If the Department of Corrections, the department, or any other law enforcement agency obtains information which indicates that an offender who establishes or maintains a permanent, temporary, or transient residence in this state meets the sexual predator criteria described in paragraph (4)(a) or paragraph (4)(d) because the offender was civilly committed or committed a similar violation in another jurisdiction . . .

When the court makes a written finding that an offender is a sexual predator, the court shall inform the sexual predator of the registration and community and public notification requirements described in this section. Within 48 hours after the court designating an offender as a sexual predator, the clerk of the circuit court shall transmit a copy of the court's written sexual predator finding to the department. If the offender is sentenced to a term of imprisonment or supervision, a copy of the court's written sexual predator finding must be submitted to the Department of Corrections.

(b) If a sexual predator is not sentenced to a term of imprisonment . . . .

(c) ***If the Department of Corrections, the department, or any other law enforcement agency obtains information which indicates that an offender meets the sexual predator criteria but the court did not make a written finding that the offender is a sexual predator as required in paragraph (a), the Department of Corrections, the department, or the law enforcement agency***

*shall notify the state attorney who prosecuted the offense for offenders described in subparagraph (a)1.*, or the state attorney of the county where the offender establishes or maintains a residence upon first entering the state for offenders described in subparagraph (a)3. *The state attorney shall bring the matter to the court's attention in order to establish that the offender meets the sexual predator criteria. If the state attorney fails to establish that an offender meets the sexual predator criteria and the court does not make a written finding that an offender is a sexual predator, the offender is not required to register with the department as a sexual predator. The Department of Corrections, the department, or any other law enforcement agency shall not administratively designate an offender as a sexual predator without a written finding from the court that the offender is a sexual predator.*

(d)   A person who establishes or maintains a residence in this state and who has not been designated as a sexual predator by a court of this state but who has been designated as a sexual predator, as a sexually violent predator, or by another sexual offender designation in another state or jurisdiction . . . .

§ 775.221(4)-(5), Fla. Stat. (2011) (bold italics emphasis added).

As indicated above, nothing in the record reflects that Reed has been designated by the court as a sexual predator.  It appears, from the plain language of this statute, that if the Department of Corrections, "the department" (which is the FDLE, according to the definition section of the Act, *see* § 775.21(2)(f), Florida Statutes (2011)), or "any other law enforcement agency" obtains information indicating that Reed meets the sexual predator criteria, and the court has not in fact made a written finding

to that effect, then the DOC, FDLE, or law enforcement agency contacts the prosecutor and the prosecutor brings the matter to the court's attention. Here, however, both at the plea hearing and in the state post-conviction proceeding, the prosecutor indicated, for whatever reason, Reed should be classified as a sexual offender and he does not qualify as a sexual predator. Ex. B1 at 553-54.   The statute further provides that, without a written finding from the court, the DOC, the department, or other law enforcement agency shall not designate an offender as a sexual predator.

Nevertheless, case law in Florida indicates "the Florida Sexual Predator Act is mandatory, and a trial judge must designate an individual as a sexual predator if the statutory criteria are established."   Miller v. State, 112 So. 3d 142 (Fla. 1st DCA 2013).   In Miller, the defendant had entered a guilty plea to sexual battery on a helpless victim, a violation of section 794.011(4)(a), Florida Statutes (2010), one of the charges to which Reed also pled.   Miller, 112 So. 3d at 142; *see* Ex. B1 at 266.   Miller filed a motion to modify his designation as a sexual predator "because his plea specifically provided that he would be designated as a sexual offender."   Miller, 112 So. 3d at 142.   "During the plea and sentencing hearing, the parties and the court spoke in terms of [Miller] being designated as a sexual offender, and

did not reference or request that [Miller] be designated as a sexual predator." *Id.* Following the hearing in Miller's case, unlike what has evidently occurred in Reed's case, the trial court entered an order designating Miller a sexual predator. *Id.* The trial court denied Miller's motion to modify such designation and, on appeal, the First DCA affirmed, explaining the sexual predator designation is mandatory if the statutory criteria are established and "a court may not enter an order approving a plea agreement that exempts a person who meets the criteria for designation as a sexual predator." *Id.* The court declined to address whether Miller had been "properly informed that such a designation was mandatory" because that issue was not raised in that case. *Id.* at 142-43.

In this case, as in <u>Miller</u>, both sides believed and indicated that Reed would be designated a sexual offender, not a sexual predator, and his plea and judgment indicate such. The record arguably supports the state post-conviction court's findings that Reed was aware he may be designated a sexual predator because the trial judge referenced that designation at his plea and sentencing hearing, as set forth above. Ex. B4 07/03/12 at 2-5. Although both defense counsel and the prosecutor "corrected" the judge, the judge nevertheless at least referenced the "sexual predator" designation,

versus the "sexual offender" designation.   The judge also allowed Reed the opportunity to ask questions about the designation.   Notably, from the plea transcript, if Reed is to be designated a sexual predator, defense counsel was not the only one involved in his plea who was wrong about the appropriate designation and thus defense counsel's actions may not fall "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.   A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.   The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.").

In addition, although the written plea offer, signed by Reed, indicates Reed is "to be designated Sexual Offender," that document also includes the following paragraphs:

> **4.15.**   I understand that if I plea guilty or nolo contendere to any crime that is included in the **SEXUAL PREDATOR** criteria and § 775.21, Fla. Stat., and if I qualify as a **SEXUAL PREDATOR** as defined in § 775.21, Fla. Stat., the Court will enter a written

order finding me to be a **SEXUAL PREDATOR**.   If I am found to be a **SEXUAL PREDATOR** by the Court, I understand I will have to maintain registration as a **SEXUAL PREDATOR** with the Dept. of Corrections and appropriate law enforcement agencies will inform the community and public of my presence.

Ex. B1 at 247.  As previously indicated, the written plea also contains an acknowledgment, signed by Reed, that he has "read and understand[s] the contents of this document, and if represented by an attorney, [he has] discussed with [his] attorney all of the ramifications or consequences of entering a plea of guilty or nolo contendere to these charges" and he was "satisfied with the attorney's advice and services."   *Id.* at 250.

Even assuming Reed demonstrated deficient performance by counsel regarding any alleged misadvice about the sexual predator designation, the state post-conviction court did not unreasonably conclude he had not shown prejudice.   The <u>Strickland</u> prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  <u>Hill</u>, 474 U.S. at 59.   "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Id.*

In <u>Hill</u>, the U.S. Supreme Court addressed "the claimed error of

counsel" consisting of "erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain." *Id.* at 60. The Court determined:

> We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.' *Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.* Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Id.* (emphasis added).

Similarly, in this case, in the first ground of his § 2254 petition, Reed did not allege that, if defense counsel had correctly advised him about the sexual predator designation (or about post-prison supervision, analyzed above), he would not have entered the plea and would have insisted on going to trial. *See* ECF No. 7 at 11-18. Further, Reed alleged no special circumstances that might support the conclusion that he placed particular weight on such designation in deciding whether to take the plea. *See id.*

Moreover, under <u>Hill</u>, the prejudice inquiry is an objective one and, thus, Reed's self-serving testimony at the evidentiary hearing that, if he had been correctly advised, he would have insisted on going to trial, is insufficient.   *See* <u>Hill</u>, 474 U.S. at 59; *see, e.g.*, <u>Gaedtke v. McNeil</u>, 612 F. Supp. 2d 1209, 1230 (M.D. Fla. Mar. 25, 2009), *aff'd* 369 F. App'x 12 (11th Cir. 2010).   To obtain relief, a petitioner must demonstrate that a decision to reject the plea and proceed to trial "would have been rational under the circumstances." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010); *see* <u>Hill</u>, 474 U.S. at 59-60.   Here, given the evidence and circumstances involved in the cases, including the potential exposure to two life sentences plus an additional sixty (60) years in prison, as recounted by Respondent in its answer, *see* ECF No. 17 at 25-28, and as referenced in the analysis of the remaining grounds, *infra*, the state post-conviction court did not unreasonably apply <u>Strickland</u> when it concluded Reed had not shown prejudice by Platteborze's alleged misadvice.

### Jimmy Ryce Act

Further, Reed's testimony at the evidentiary hearing refutes his claim regarding any misadvice about the Jimmy Ryce Act as Reed testified that Platteborze did not discuss the Jimmy Ryce Act and the state court found his

testimony credible.   The state post-conviction court thus properly concluded that, because Platteborze did not discuss that Act with Reed, Platteborze could not have "affirmatively misadvised" Reed regarding involuntary civil commitment under the Act.   *See, e.g.*, United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) ("[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance."); Reinheimer v. Sec'y, Dep't of Corr., --- F. App'x ---, 2020 WL 5371548, at *2 (11th Cir. Sept. 8, 2020) (explaining "a defendant cannot be affirmatively misadvised about the Jimmy Ryce Act if counsel failed to inform him altogether").   As the state court also determined, Platteborze was not required to advise Reed regarding a collateral consequence of his plea, such as the application of the Jimmy Ryce Act, and thus could not be ineffective for failing to so advise him.   *See, e.g.,* McCarthy v. United States, 320 F.3d 1230, 1234 (11th Cir. 1985) (explaining that neither the court nor counsel is constitutionally required to make defendant aware of collateral consequences of plea); State v. Partlow, 840 So. 2d 1040, 1041 (Fla. 2003) (holding that "the sexual offender registration requirement is a collateral consequence of the plea, and therefore failure to inform the defendant of that requirement before he

entered the plea does not render his plea involuntary"); Morgan v. State, 911 So. 2d 162, 164 (Fla. 3d DCA 2005) (holding defense counsel not required to inform defendant about collateral consequences of plea, including application of Jimmy Ryce Act).

Moreover, the written plea agreement itself actually references the Jimmy Ryce Act.  Ex. B1 at 247 ("**4.16**   I understand that if I plea guilty or nolo contendere to a 'sexually violent offense' as defined by § 394.912, Fla. Stat., and sentenced to prison, prior to my release from prison, I may be declared to be a "**SEXUALLY VIOLENT PREDATOR**" and be subject to a civil commitment for long term care and treatment in a state institution, pursuant to Ch. 394, Fla. Stat. ("Jimmy Ryce Act").")   As previously indicated, the written plea contains an acknowledgment, signed by Reed, that he has "read and understand[s] the contents of this document, and if represented by an attorney, [he has] discussed with [his] attorney all of the ramifications or consequences of entering a plea of guilty or nolo contendere to these charges" and he was "satisfied with the attorney's advice and services."  *Id.* at 250.

Based on the foregoing, Petitioner Reed has not shown that the state courts' adjudication of the ineffective assistance of counsel claims in this

ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.    *See* 28 U.S.C. § 2254(d)(1)-(2).    Under the double deferential review this Court applies to a <u>Strickland</u> claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

### <u>Ground 2</u>:    IAC – Misadvice About Williams Rule Evidence

In his second ground, Petitioner Reed argues defense counsel provided ineffective assistance "by failing to properly advise Petitioner regarding the <u>Williams</u> rule."    ECF No. 7 at 19-25.    Reed raised this argument as the first claim in his second amended Rule 3.850 motion.    Ex. B3 at 1552-56.    The state post-conviction trial court denied the claim, making the following findings:

> **I) Ineffective assistance of counsel allegedly for misadvising the defendant regarding Williams rule evidence in case number 2011-CF-000494**
>
> In his first claim, the defendant alleges that his counsel was ineffective for misadvising the defendant that "the State will use the Williams rule in his case."    In particular, the defendant alleges that his counsel advised him that "the State will use evidence and acts in one case to prove guilt in the other case, this all but ending any opportunity to defeat your charges (paraphrasing)."    The defendant appears to allege that such "advice" was incorrect because "a review of the case summary sheets will demonstrate that the State had no intention to utilize the Williams Rule," considering ". . . the required ten (10) day

notice per § 90.404(2)(c), Fla. Stat., would have needed to be filed by June 29, 2012;" however, "[t]he prosecution made no such required filing."   Additionally, the defendant alleges that the "evidence" of the offenses charged in the instant cases would not have been admissible at his trial because such "cases or acts" were not "strikingly similar" and would not "have probative value to show material fact to be admitted."

At the evidentiary hearing, the defendant and Mr. Leonard Platteborze, who was the defendant's trial counsel, testified. The defendant testified his counsel "continually brought up the Williams rule."   The defendant testified his counsel "mentioned that the State would use what's called the Williams rule which will allow the State to introduce both of these charges or allegations or crimes to the jury at one trial."   The defendant also testified that such information "was very disturbing . . . because I put myself in a jury's position of listening to the potential burglary and assault case, and to have two allegations against an individual, I thought it was pretty disturbing news."   The defendant testified his counsel "never discussed anything about the Williams rule or the procedures of the Williams rule."   Additionally, the defendant testified his counsel did not discuss any motions that could be filed before trial.   The defendant testified he would not have accepted the plea if his counsel "would have fully explained the Williams rule the way that I have researched and learned it."

Mr. Leonard Platteborze testified he "vaguely" remembered representing the defendant.   Mr. Leonard Platteborze testified he discussed the Williams Rule with the defendant.   Mr. Leonard Platteborze also testified he advised the defendant regarding the possibility that the state would introduce Williams rule evidence.   Mr. Leonard Platteborze also testified he would have explained to the defendant that the Judge determines admissibility of Williams rule evidence.

After considering the testimony presented at the evidentiary hearing, the court concludes that the defendant has failed to demonstrate an entitlement to relief.   The court finds

the defendant's testimony to be credible.   The defendant does not establish either prong of <u>Strickland</u>.  The testimony at the evidentiary hearing reflects counsel reviewed discovery with the defendant, including evidence and documents.   Although the defendant may desire otherwise, he acknowledged during the evidentiary hearing that similarities exist regarding both of the underlying cases.   Additionally, the defendant testified he entered his plea on July 2 because the state's plea offer was going to be revoked on July 3.   Such information indicates counsel would not have had sufficient time to explain the Williams rule process in extensive detail as the defendant now desires.   In any event, the testimony reflects there is a reasonable probability that the other case would have been admissible under Williams rule.   Considering such information, the record supports counsel's advice regarding the Williams rule evidence.   As a result, counsel could not be deficient for advising the defendant correctly regarding the application of the Williams rule in the instant cases.

Furthermore, the defendant does not establish prejudice. In particular, the defendant's testimony does not show any reasonable probability that undermines confidence in the outcome, especially considering the defendant acknowledges the possibility of the jury hearing the Williams rule evidence was "disturbing" to him.   Therefore, the instant claim is denied.

Ex. B1 at 740-43 (footnotes omitted).

Reed appealed the denial of this claim to the First DCA.   Ex. B5 at 13,

24, 28.   As indicated above, the First DCA affirmed the case without a

written opinion and that court's summary affirmance is also an adjudication

on the merits entitled to deference under 28 U.S.C. § 2254(d).   *See* <u>Richter</u>,

562 U.S. at 99.   A review of the record supports the state courts'

determination.   *See* <u>Wilson</u>, 138 S. Ct. at 1192.

In particular, the transcript of the evidentiary hearing supports the state post-conviction court's findings regarding the testimony of Reed and Platteborze.   Reed testified that Platteborze "continually brought up the Williams Rule."   Ex. B4 8/23/16 at 14.   Reed testified that, in their second meeting, Platteborze "mentioned that the State would use what's called the Williams Rule which will allow the State to introduce both of these charges or allegations or crimes to the jury at one trial."   *Id.*   Reed testified this "was very disturbing . . . because I put myself in a jury's position of listening to the potential burglary and assault case, and to have two allegations against an individual, I thought it was pretty disturbing news."   *Id.* at 14-15.   He further testified that Platteborze "never discussed anything about the Williams Rule or the procedures of the Williams Rule," and Platteborze told him "only that the Williams Rule was going to allow the State to introduce evidence to both of these cases in one trial."   *Id.* at 15.   Reed testified that Platteborze never discussed any pretrial challenges or defense motions that could be filed, and left Reed with the impression that the Williams Rule issue could not be challenged.   *Id.* at 16, 30.   Reed testified that, but for Platteborze's explanation of the Williams Rule issue, he would not have taken the plea and

he would have proceeded to trial.    *Id.* at 16; *see id.* at 20, 30.   He testified,

"If he would have fully explained the Williams Rule the way that I have

researched and learned it, it would not have bothered me."   *Id.* at 20; *see*

*id.* at 42.    Reed explained that he researched the Williams Rule in the prison

law library and realized "some of the criteria needed to be similarities or to

show a pattern of character and my – the two cases against me, there's more

dissimilar issues than there are similarities" and "[a]ny similarities would be

just more general similarities."   *Id.* at 30.

Platteborze testified he "[v]aguely" recalled representing Reed.   *Id.* at

46.   He testified that he and Reed "spoke about the Williams Rule," but he

did not "know how in depth we went."   *Id.* at 49.   He testified that he did not

believe he "would have told him that they were going to bring in Williams

Rule evidence"; rather, he "told him that it was a possibility."   *Id.*; *see id.* at

56.   He recalled discussing with Reed the ten-day rule regarding the State

filing a notice of intent, though he did not remember the discussion word-for-

word.   *Id.* at 50.   He testified that he "would have explained to [Reed] the

Williams Rule allowed the State to introduce other bad acts and that that

notice had to be filed within ten days of trial."   *Id.*   He testified he would

have also explained to Reed that "it wasn't my decision whether the Williams

Rule material was coming in; it was the judge's."   *Id.* at 53.   Platteborze did

not recall discussing with Reed a strategy to prevent the Williams Rule

evidence from being used.   *Id.*   He testified, "I told him it was a possibility

that they might seek to introduce one of the cases as Williams Rule in a trial

of the other case."   *Id.*

The post-conviction trial judge found Reed's testimony credible but

also found Reed had not established either prong of <u>Strickland</u>.   Ex. B1 at

742.   As that court determined, Reed acknowledged in his testimony at the

evidentiary hearing that "similarities exist regarding both of the underlying

cases."   *Id.*   Indeed, the court determined "the testimony reflects there is a

reasonable possibility that the other case would have been admissible under

the Williams rule."   *Id.* at 742-43; *see* § 90.404(2)(c), Fla. Stat. (2011)

(providing in subsection 1 that "[i]n a criminal case in which the defendant is

charged with a sexual offense, evidence of the defendant's commission of

other crimes, wrongs, or acts involving a sexual offense is admissible and

may be considered for its bearing on any matter to which it is relevant" and

further providing in subsection 2 that "the term 'sexual offense' means

conduct proscribed by . . . s. 794.011"); <u>Buenoano v. State</u>, 527 So. 2d 194,

197 (Fla. 1988) ("Under the Williams rule evidence of other crimes, wrongs

and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in <u>Williams v. State</u> and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."); <u>Williams v. State</u>, 110 So. 2d 654, 663 (Fla. 1959) ("[E]vidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.").

Accordingly, as the court concluded, the record supports Platteborze's advice regarding this evidence and counsel cannot be deficient for correctly advising Reed.    *See* Ex. B1 at 743; *see, e.g.*, <u>Gore v. State</u>, 599 So. 2d 978, 984 (Fla. 1992) (discussing Williams Rule evidence and explaining, where "the common points . . . may not be sufficiently unique or unusual when considered individually, they [may] establish a sufficiently unique pattern of criminal activity when all of the common points are considered together"). Further, Reed acknowledged in his testimony that the thought of the

evidence coming in "was very disturbing" as he put himself in a juror's position "of listening to the potential burglary and assault case, and to have two allegations against an individual . . . was pretty disturbing news."   Ex. B4 8/23/16 at 14-15.   Such testimony and evidence contradict Reed's claim that he was not properly informed regarding such evidence and belie his claim that he would not have entered a plea if he had been so informed.

In his reply, Reed "clarifies that his claim is not that the Williams rule evidence would not have been introduced – but that defense counsel used the Williams rule evidence to threaten/coerce/induce Petitioner Reed to give up his constitutional right to a jury trial and enter a no contest plea."   ECF No. 26 at 5.   This appears to be different from the claim raised in state court and, if so, has not been exhausted.   Moreover, this claim is refuted by Reed's statements during the plea colloquy that he was not forced or coerced in any way to enter his plea, Ex. B4 07/03/12 at 6, and his signature on his written plea acknowledging that his "attorney has not compelled or induced [him] to enter into this plea agreement by any force, duress, threats, pressure or promises," Ex. B1 at 250.

Based on the foregoing, Petitioner Reed has not shown that the state courts' adjudication of this ground involved an unreasonable application of

clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Under the double deferential review this Court applies to a <u>Strickland</u> claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

## <u>Ground 3</u>:   IAC – Consent Defense

In his third ground, Petitioner Reed asserts his trial counsel provided ineffective assistance "by failing to properly advise [him] that he had a valid consent defense to the charges involving alleged victim K.W."   ECF No. 7 at 25-29.   Reed raised this argument in state court as the third claim in his second amended Rule 3.850 motion.   Ex. B3 at 1562-67.   The state post-conviction trial court denied the claim, making the following findings:

> **III)   Ineffective assistance of counsel claim regarding an alleged defense of "consent" in case number 2011-CF-000506**
>
> In his third claim, the defendant alleges his counsel was ineffective for failing to investigate or "inform him that consent was a defense to sexual battery and burglary."   In an attempt to support his claim that "consent" was a "viable defense," the defendant alleges that he was given "consent" to enter the residence and engaged in a "consensual sexual encounter." The defendant also alleges counsel should have investigated a defense of "consent," considering the content of the underlying offense report and the victim's statement.   Additionally, the defendant alleges he would have proceeded to trial if counsel had investigated and informed him of the "viable defense" of "consent."

At the evidentiary hearing, the defendant and Mr. Leonard Platteborze testified. The defendant testified that he knew the victim because he met her in the parking lot when he arrived to visit "Penny Shuttle." The defendant also testified that he "struck up a conversation with [the victim]. It was pretty obvious that she had been drinking and after about ten minutes of conversation she invited me in for a drink." The defendant testified that he had a "consensual sexual encounter" with the victim at the apartment. Additionally, the defendant testified his trial counsel "never went into" the issue of "consent" with him. The defendant also testified he would not have accepted the plea if he had been advised regarding the defense of "consent." On the other hand, the defendant testified he informed his counsel and the investigating law enforcement officers that the victim "consented."

Mr. Leonard Platteborze testified he "vaguely" remembered representing the defendant. Mr. Leonard Platteborze also testified that he had one or more conversations regarding "consent" with the defendant. Mr. Leonard Platteborze testified the defendant mentioned the issue of "consent" in at least one of the underlying cases.

After considering the testimony presented at the evidentiary hearing, the court concludes the defendant has failed to demonstrate an entitlement to relief. The court finds the defendant's testimony to be credible. The defendant does not establish either prong of <u>Strickland</u>. The testimony at the evidentiary hearing reflects the defendant was aware of the alleged defense of "consent." Indeed, the testimony is clear the defendant informed law enforcement and his counsel of alleged "consent" by the victim in the underlying case as early as the date of his initial contact with law enforcement. In other words, the testimony shows the defendant was aware of the alleged defense of "consent" before he entered his plea. Considering such information, the testimony refutes the defendant's claim that he was not informed of the alleged defense of "consent."

> Furthermore, the defendant does not establish prejudice. In particular, the defendant does not show a reasonable probability that undermines confidence in the outcome. As a result, counsel could not be ineffective for failing to advise the defendant regarding an alleged defense of which the defendant was aware. Therefore, the instant claim is denied.

Ex. B1 at 745-47 (footnotes omitted). Reed appealed the denial of this claim to the First DCA. Ex. B5 at 13, 32, 35. As indicated above, the First DCA affirmed the case without a written opinion and that court's summary affirmance is also an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. A review of the record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

In particular, the transcript of the evidentiary hearing supports the state post-conviction court's findings regarding the testimony of Reed and Platteborze. Reed testified that he was in the victim's apartment complex the night of the crime because he planned to meet Penny Shuttle, a resident of the complex, and when he was walking to Penny's apartment, he noticed the victim and they struck up a conversation. Ex. B4 at 9-10. He testified that "after about ten minutes of conversation," the victim invited him to her apartment, where they had "intimate relations." *Id.* at 10, 12. Reed testified that the sexual encounter was consensual. *Id.* at 13. He further testified that he explained that to the arresting officer and to Platteborze. *Id.*

He testified that his attorney took notes but never discussed consent as a defense.  *Id.* at 13-14, 20-22.   Reed testified he "would not have taken a plea if he would have discussed the consent and if he would have consulted with [him] with the consent and informed [him] that's actually a defense."  *Id.* at 21.

Platteborze testified he "[v]aguely" recalled representing Reed.  *Id.* at 46.   He "[v]aguely" recalled discussing consent as a defense, explaining that he and Reed had "one or more conversations about consent."  *Id.* at 46-47; *see id.* at 56.   He did not recall specifics about whether he ever explained consent as a defense.  *Id.* at 47.

The post-conviction trial judge found Reed's testimony credible but also found that Reed had not established either prong of Strickland.   As that court determined, from the testimony at the evidentiary hearing, Reed "was aware of the alleged defense of 'consent'" before he entered his plea; Reed had told the investigating officer and his defense attorney that the victim consented.   Ex. B1 at 746-47.   Platteborze testified he and Reed had conversations about consent.   Ex. B4 at 46-47, 56.   *Cf.* Jones v. State, 846 So. 2d 1224 (Fla. 2d DCA 2003) (reversing and remanding summary denial of post-conviction claim for evidentiary hearing on issue that defense counsel

"was ineffective for inducing him to accept the plea bargain without telling him that consent is a defense to a sexual battery charge" because plea colloquy transcript attached to order did not refute claim).   The arrest report narrative indicates Reed "claimed he had sexual intercourse" with the victim K.W. and "the sexual encounter was consensual."   Ex. B1 at 279.   Such testimony and evidence thus refute Reed's claim that he was not informed regarding such alleged defense and belie his claim that he would not have entered a plea if he had known of the alleged defense.

Based on the foregoing, Petitioner Reed has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Under the double deferential review this Court applies to a Strickland claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

### Ground 4:   IAC – Misidentification Defense

In his fourth ground, Petitioner Reed asserts his trial counsel provided ineffective assistance "by failing to properly advise [him] that he had a valid misidentification defense to the charges involving alleged victim D.B."   ECF No. 7 at 29-33.   Reed raised this argument in state court as the second

claim in his second amended Rule 3.850 motion.   Ex. B3 at 1557-61.   The

state post-conviction trial court denied the claim, making the following

findings:

### II)   Ineffective assistance of counsel claim regarding "misidentification" in case number 2011-CF-000494

In his second claim, the defendant alleges his counsel was ineffective for failing to inform him of a "viable defense available to him."   The defendant alleges his counsel did not "inform him that misidentification was a defense to sexual battery and burglary" in case number 2011-CF-000494.   On the other hand, the defendant appears to allege his counsel did not "make reasonable investigations."   The defendant also alleges his "defense . . . is likely to succeed at trial due to the obvious showing of Defendant's innocence and the lack of evidence placing Defendant as [the victim's] assailant and her multiple identifications."   Additionally, the defendant alleges that "had counsel merely informed Defendant of the viable defense available to him, he would not have accepted a plea."

However, the exact claim the defendant desires to raise is not clear.   The limited allegations the defendant includes are comingled in his numbered "claim two" and could support either of the specified ineffective assistance of counsel claims.   In any event, the defendant does not establish both prongs of <u>Strickland</u> for either claim.   Other than conclusory allegations that a "misidentification" occurred, the defendant does not include sufficient allegations to show that a "viable defense" of "misidentification" existed of which counsel should have investigated or informed the defendant.   Other than a broad conclusory allegation that the "misidentification" was "suggestive," the defendant does not provide sufficient allegations to indicate law enforcement used an unnecessarily suggestive identification procedure during the "misidentification."   The defendant does not prove a "misidentification" occurred

merely because he disagrees with the victim's out of court identification or with events or incidents that occurred during law enforcement's investigation of the underlying offenses.

Additionally, the defendant does not demonstrate that "misidentification" was a "viable defense" automatically merely because he now alleges a claim of "innocence." To the extent the defendant alleges "misidentification" was a "viable defense" because he "offered counsel additional exculpatory evidence that is not located within the discovery," the defendant does not describe or include any such "exculpatory evidence" in the instant motion. Counsel's performance could not be deficient for failing to inform the defendant of a defense that was not "viable."

The defendant also does not establish prejudice. The defendant does not show that the victim's "misidentification" would have been excluded at trial automatically merely because he believes such identification was a "misidentification." The defendant's list of "supporting facts from the offense reports" alone does not prove automatically that the victim's identification of the defendant would have been excluded at trial as a "misidentification." Other than conclusory allegations, the defendant does not include sufficient allegations to demonstrate a reasonable probability that undermines confidence in the outcome. Therefore, the instant claim is denied.

Ex. B1 at 743-45. Reed appealed the denial of this claim to the First DCA.

Ex. B5. As indicated above, the First DCA affirmed the case without a

written opinion and that court's summary affirmance is also an adjudication

on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter,

562 U.S. at 99. A review of the record supports the state courts'

determination. *See* Wilson, 138 S. Ct. at 1192.

In the second claim of his second amended Rule 3.850 motion and in his reply in the Rule 3.850 proceeding, Reed explained he had a "viable defense" of misidentification because the victim D.B. never indicated the perpetrator had a tattoo and Reed has a "prominent tattoo" on his upper arm. Ex. B3 at 1557-61; ECF No. 7 at 29. Petitioner Reed asserts this constitutes a "sufficient claim of failure to advise of the misidentification defense based on D.B. failing to state that the assailant had a tattoo," contrary to the state post-conviction court's determination. ECF No. 7 at 30.

The state post-conviction court determined Reed did not establish deficient performance as he did not sufficiently show any "misidentification." The record supports this determination. As Respondent explains, the victim D.B. described her attacker as a white male in his thirties, Ex. B3 at 1621, and Reed is a white male who was 41 years old at the time of the offense in that case, *id.* at 1604, 1621. D.B. further described her attacker as being between 5'10'' and 6' tall, Ex. B3 at 1623, and Reed is 6' tall, *id.* at 1604. In addition, the victim's failure to include Reed's upper arm tattoo in the description of her attacker is not unreasonable given that the victim indicated her attacker held a pillow over her eyes after grabbing her and forcing her onto her bed. Ex. B1 at 140, 1623.

Based on the foregoing, Petitioner Reed has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Under the double deferential review this Court applies to a <u>Strickland</u> claim evaluated pursuant to the § 2254(d)(1) standard, this ground should be denied.

## Conclusion

Petitioner Jason W. Reed is not entitled to federal habeas relief.   The amended § 2254 petition (ECF No. 7) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 7). To the extent counsel for Petitioner has requested, in the reply (ECF No. 26 at 4), oral argument on the first ground, such request should be **DENIED**. It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 8, 2020.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.